**Glenn ARMSTEAD, Plaintiff,**

v.

**TOWN OF HARRISON and Westchester County, Defendants.**

**No. 82 Civil 4757.**

United States District Court,
S.D. New York.

Jan. 27, 1984.

Conrad J. Lynn, Spring Valley, N.Y., for plaintiff.

Barry, McTiernan & Moore, New York City, for defendant Town of Harrison; Michael F. Close, New York City, of counsel.

Semel, Boeckmann & Skydel, New York City, for defendant Westchester County; Curtis M. Roberts, Brooklyn, N.Y., of counsel.

## OPINION

### EDWARD WEINFELD, District Judge.

This action arises from the arrest and prosecution of plaintiff, Glenn Armstead, for criminal trespass, second degree, upon premises at the State University of New York, Purchase, New York ("SUNY"), which culminated in the dismissal of all charges against him at his trial on June 30, 1981, in the Town Court, Harrison, New York. Alleging violations of 42 U.S.C. §§ 1981 and 1983 (1976 & Supp. V 1981), plaintiff's amended complaint seeks compensatory damages in the amount of $500,-000, as well as attorneys' fees, from defendants Town of Harrison ("the Town") and Westchester County ("the County"), municipal corporations.[1] The Town moves for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P. The County moves to dismiss the amended complaint pursuant to Rules 12(b)(1) and (b)(6).[2]

The charge against plaintiff and the prosecution that followed was initiated by Peggy M. Farrell, a student at SUNY. She swore that while showering in her dormitory suite on October 30, 1980 at approximately 11:00 a.m., she "saw a black man's face looking over the top of the shower curtain." He importuned her to "have a little fun," whereupon she ordered him out and he left. She described the intruder as approximately 6 feet tall, of light complexion and light to medium build.[3] Another student, Michael Rivas, who was in an adjacent suite, also submitted an affidavit in which he swore that he saw the perpetrator leave the area. Rivas' affidavit corroborated Farrell's description of the intruder and both Farrell and Rivas named Armstead, the plaintiff herein, as the trespasser.

Based on those affidavits, sworn to by each on November 3, 1980, Lieutenant E.F. Thompson of the SUNY Department of Public Safety on November 7, 1980, alleged upon information and belief that Armstead had committed the crime of criminal trespass and applied for a warrant of arrest which was issued by Harrison Town Justice Harvey J. Fried.[4] The warrant was directed to "any member of the New York State Police."[5]

---

1. The original complaint named as defendants SUNY, the Town, and the County. Following a motion by the SUNY to dismiss the claims against it on Eleventh Amendment and other grounds, plaintiff voluntarily discontinued the action against the university. In his amended complaint plaintiff has also omitted claims alleged in the first complaint sounding in false arrest.

2. There is no basis for dismissal on the ground that there is no jurisdiction in this Court. Plaintiff's claims clearly arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331 (1976 & Supp. V 1981); *Fogel v. Chestnutt*, 668 F.2d 100, 107 (2d Cir.1981) (Friendly, J.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).

3. All documents referred to have been admitted by the plaintiff pursuant to Rule 36, Fed.R. Civ.P.

4. It appears that the complaint at some time stated that the grounds for Lieutenant Thompson's belief that Armstead had committed a crime were contained in "Attached Depositions of Peggy Farrell and Michael Rivas," *see People v. Armstead*, Misdemeanor Complaint No. 14128 (Nov. 7, 1980), but this statement appears to have been crossed out by Town Justice Fried.

5. *See* N.Y. Criminal Procedure Law §§ 120.30; 120.50 (McKinney's 1981).

Armstead, notified of the outstanding warrant, appeared at the SUNY Purchase Security office where he was arrested and then taken to the Town of Harrison Police Precinct,[6] where he was booked, finger-printed, and thereafter arraigned in the Town Court. Bail was set at a bond of $3,500 or $1,750 in cash, which Armstead posted ten days after his incarceration in the County jail. After various pretrial ap-pearances, a superseding complaint was filed on March 9, 1981, reducing the charge against Armstead from a misdemeanor to a violation of the criminal trespass statute.[7] At his trial, the eyewitnesses failed to ap-pear and the only witness for the prosecu-tion was Lieutenant Thompson. Upon Armstead's motion, Justice Fried dismissed the information at the close of the prosecu-tion's case in chief.

In broad terms, Armstead's amended complaint seeks recovery of damages on two grounds. First, he alleges that his prosecution "was racially ... motivated."[8] Second, he claims that the accusation against him "was false and without founda-tion and ... probable cause," and that it was "maliciously motivated, unprovoked, unwarranted, unjustified and deprived plaintiff of his right not to be prosecuted except upon probable cause."[9]

Other than these vague and conclusory allegations, there is not a single factual averment to support the claims. Plaintiff nowhere alleges that any Town or County official acted out of racial animus or bore malice against him. Rather, paragraphs 12 and 13 of his amended complaint state:

The Town and County procedures, cus-toms and practices permitted the institu-tion of this prosecution by the acceptance of a complaint from a party who had no actual knowledge of the alleged incident and who had no knowledge of the identity of the alleged perpetrator.

The procedures, customs and practices, of the prosecutor's office for evaluation of complaints permitted that office to bring unfounded charges unsupported by the evidence. The prosecutor owed a legal duty to fully investigate, yet this matter was continued and brought to trial despite the total lack of evidence pointing to defendant's guilt. The legal duty owed plaintiff was ignored and the Town and County personnel were deliber-ately indifferent to plaintiff's rights not to be maliciously prosecuted in violation of the Constitution.

Plaintiff claims, in turn, that these "pro-cedures, customs and practices" and the "deliberate[ ] indifferen[ce]" of Town and County officials caused him to be deprived of his constitutional rights,[10] and hence he is entitled to recover pursuant to §§ 1981 and 1983.

■ Turning first to Armstead's claims arising out of the "racial" motivation lying behind his prosecution, the allegations of the complaint are insufficient as a matter of law to establish liability under either § 1981 or § 1983. As the Supreme Court held only recently, "§ 1981, like [§ 1983 insofar as it incorporates] the Equal Pro-tection Clause, can be violated only by pur-poseful discrimination."[11] Armstead fails in two respects to allege the essential ele-ments for recovery against the Town or the County for purported racial discrimination. First, as already noted, he fails to allege that any employee of either the Town or

---

**6.** *See id.* § 120.90.

**7.** Violation of the trespass statute is punishable as an offense and the sentence upon conviction may not exceed 15 days' imprisonment. N.Y. Penal Law §§ 70.15(4); 140.05 (McKinney's 1975 & Supp. 1983–84). The original charge against Armstead, criminal trespass in the second degree, is a class A misdemeanor punish-able by not more than 3 months' imprisonment. N.Y.Penal Law §§ 70.15(2); 140.15.

**8.** Amended complaint at ¶ 11.

**9.** *Id.* at ¶¶ 8, 11.

**10.** *Id.* at ¶ 14.

**11.** *General Bldg. Contractors Ass'n, Inc. v. Penn-sylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *see Keating v. Carey,* 706 F.2d 377, 379 (2d Cir.1983) ("recovery under [§ 1981] requires a showing of racial or, per-haps, quasi-racial discrimination").

the County actually possessed or adopted a racial animus with respect to any action taken against the plaintiff.[12] Racial motive "in the air, so to speak, will not do." [13] Second, Armstead fails to allege that the treatment afforded to him actually differed from that accorded similarly situated persons of other races.[14] Even if there were purposeful conduct, it is not alleged to be discriminatory on the basis of race. Plaintiff's claims against both the Town and the County, insofar as they arise from the "racial" nature of his prosecution, must be dismissed.

With respect to plaintiff's remaining claims, which are cognizable only under § 1983, it is apparent from plaintiff's complaint and the arguments of his attorney that the essence of Armstead's allegations is that he was charged with a crime and forced to stand trial when in fact there was no probable cause to believe he had committed any unlawful act; that although Town and County officials did not actually know that plaintiff was maliciously prosecuted, they were deliberately indifferent to facts indicating such malicious use of process; that even if no such facts were before these officials the prosecutor had an affirmative duty to investigate the case and determine the facts; and that, armed with this constructive knowledge of the lack of probable cause for and malicious basis of the prosecution, Town and County officials were constitutionally obligated to take steps to terminate it.[15]

■ To state plaintiff's claim is to realize its lack of merit. It bears emphasis that the prosecution here was not initiated by either County or Town officials but originated with a student complaint upon which Lieutenant Thompson, an official of the SUNY Department of Public Safety, submitted his affidavit in applying to the Town Justice for an arrest warrant. Plaintiff acknowledges in his amended complaint that a warrant for his arrest was issued by the Town Justice. Upon the issuance of the warrant, which carried with it a finding of probable cause, the Town Police were under a duty to arrest the defendant, and the office of the District Attorney was under an obligation to prosecute the charge unless, in its independent judgment, it believed prosecution was not warranted. It was not the function of either to review the determination of the Town Justice that probable cause existed to believe that the crime charged had been committed. Wholly aside from plaintiff's failure to specify what facts municipal officials were "deliberately indifferent" to, or what facts the prosecutor would have found had he investigated the case on plaintiff's behalf, plaintiff erects a set of constitutional duties for which there is no legal support. He would require the Town Justice to investigate and verify the underlying facts of the complaint before deciding that probable cause exists for the issuance of a warrant.[16] As to the police officers and others who executed the warrant, he would create a duty independently to investigate the charges and re-

---

**12.** Even were he to succeed on his claims sounding in malicious prosecution, he would not necessarily have shown that he was singled out on the basis of his race. Accordingly, an allegation of racially motivated discrimination cannot be inferred.

**13.** *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 341, 162 N.E. 99, 99 (1928) (negligence in the air).

**14.** *See Smith v. Pan Am World Airways,* 706 F.2d 771, 774 (6th Cir.1983) (allegation of racial malice will not give rise to § 1981 recovery in the absence of an "act of discrimination").

**15.** The Court is thus not presented with an allegation that the prosecutor himself acted out of

actual malice, an allegation which itself has an "uncertain" status under § 1983. *Keeler v. Hewitt,* 697 F.2d 8, 13 (1st Cir.1982). *Compare Jennings v. Shuman,* 567 F.2d 1213, 1230 (3d Cir. 1977), *with Paskaly v. Seale,* 506 F.2d 1209, 1212 (9th Cir.1974); *Curry v. Ragan,* 257 F.2d 449, 450 (5th Cir.), *cert. denied,* 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85 (1958); *Koch v. Schneider,* 550 F.Supp. 846, 852 (N.D.Ill.1982); *Witt v. Harbour,* 508 F.Supp. 378, 380 (W.D.Va.1980), *aff'd,* 644 F.2d 883 (4th Cir.), *cert. denied,* 454 U.S. 879, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981).

**16.** *But see Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975) ("[W]e do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute.").

view the determination of a judicial officer.[17] And upon the District Attorney he would impose not only the duty to evaluate the probable cause determination by the Town Justice but also an obligation to act as an investigator and advocate for the defendant.[18] These duties are grossly inconsistent with our adversary system of justice and there is no support for imposing them, even assuming they would be desirable.

Moreover, § 1983 does not permit the imposition of liability upon a municipal defendant unless that defendant, "under color of some official policy, 'causes' an employee to violate another's constitutional rights."[19] The requirement that the municipality actually "cause" the constitutional injury flows directly from the language of § 1983, which holds liable only those persons acting under color of state law who "subject, or cause to be subjected, any person ... to the deprivation of any rights secured by the Constitution ...."[20] Causation may not be shown by proof that a municipality simply employed a tortfeasor.[21]

As this Court has stated in a similar situation:

Official policy ordinarily cannot be inferred ... from a single incident of illegality, unless the incident is unusually brutal or egregious, evidencing deliberate indifference or gross negligence on the part of the municipal officials, or there is other evidence of supervisory indifference such as acquiescence in a prior pattern of misconduct .... The mere failure of a county [or town] to supervise its employees to prevent a single constitutional deprivation is insufficient to impose § 1983 liability on that county [or town].[22]

■ Distilled to their essence, plaintiff's claims against the Town and the County sounding in malicious prosecution proceed on a theory of respondeat superior. He alleges no pattern of malicious prosecutions; nor does he set forth facts that reasonably give rise to an inference of egregious dereliction of duty.[23] According-

---

**17.** *But see Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.").

**18.** *But see United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976) ("[W]e have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel ...."); *see also United States v. Higgs,* 713 F.2d 39, 44 (3d Cir.1983) (timing of pretrial discovery).

**19.** *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

**20.** 42 U.S.C. § 1983 (1976 & Supp. V 1981).

**21.** *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Rookard v. Health & Hospitals Corp.,* 710 F.2d 41, 45 (2d Cir.1983); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983).

**22.** *Cerbone v. County of Westchester,* 508 F.Supp. 780, 783–84 (S.D.N.Y.1981).

**23.** *See Rookard v. Health & Hospitals Corp.,* 710 F.2d 41, 45 (2d Cir.1983) (unreviewable firing of employee for exercise of First Amendment rights). Even if *Rookard* implies that the requirements of *Monell* are met whenever unconstitutional action is alleged on the part of "an official [who] has final authority over significant matters involving the exercise of discretion," *id.,* plaintiff has set forth no facts indicating which officials exercising what sort of discretion violated his constitutional rights. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), does not relieve plaintiff of alleging the essential elements of a claim under § 1983, and the District Court is not obliged to rewrite a faulty complaint in order to save it from a motion to dismiss. *See Batista v. Rodriguez,* 702 F.2d 393, 398 (2d Cir. 1983). If a single incident of illegality can give rise to § 1983 liability only upon a showing that it was the result of the act of an official with "final authority over significant matters involving the exercise of discretion," that authority must generally be set forth in the complaint. *See Rookard,* 710 F.2d at 45 n. 4.

ly, and for the reasons stated above, these claims must be dismissed.

■ The malicious prosecution claim against the County must be dismissed for an additional reason. In prosecuting the charge against Armstead, the District Attorney [24] enjoyed absolute immunity from personal liability in any action under § 1983 for alleged violations of Armstead's constitutional rights.[25] To hold that the District Attorney's actions which were protected by that immunity may nonetheless subject the County to liability is aberrant and, as noted above, inconsistent with the holding in *Monell v. New York City Department of Social Services* [26] that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." [27]

The question here, whether a municipality may assert the absolute immunity of its prosecutorial employees acting within the core area of their responsibilities is not controlled by the Supreme Court's decision in *Owen v. City of Independence*,[28] which held that a municipality may not assert a good-faith immunity enjoyed by its employees, except insofar as *Owen* commands

lower federal courts to determine whether history or policy supports a construction of § 1983 that permits a particular type of immunity as a defense to a damage action under the statute.[29] Applying this analysis, the Court concludes that strong policy reasons justify the right of a municipality to interpose the absolute immunity of its prosecutorial officials as a ground for dismissing an action against it sounding in malicious prosecution.[30] It can scarcely be denied that a defendant who has been acquitted of criminal charges has nothing to lose by commencing a § 1983 action against the prosecutor's municipal employer. The costs to the public from frivolous claims of malicious prosecution, however, are great, and far outweigh the minimal deterrent effect of civil suits on actual prosecutorial misconduct. Whether the government's case is weak or strong, if there is evidence establishing probable cause to believe criminal acts have been performed, the prosecutor should be given every incentive to submit the evidence to the "crucible of the judicial process so that the factfinder may consider it ... to determine where the truth lies." [31] These incen-

---

**24.** The Court assumes, without deciding, that in New York the District Attorney is a County, not State, official. *Compare Whitmore v. State,* 55 A.D.2d 745, 746, 389 N.Y.S.2d 443, 444 (1976) ("rule that Assistant District Attorney is not a State officer for whose tortious acts the State may be held liable, but is rather a local officer for those torts and State is not responsible is so well established that no discussion is even necessary"), *with, Spielman Motor Sales Co., Inc. v. Dodge,* 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935) (local officers may in fact "represent the State" for purposes of framing injunction to restrain state law that violates federal rights).

**25.** *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976).

**26.** 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**27.** *Id.* at 691, 98 S.Ct. at 2036.

**28.** 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

**29.** *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1104 (W.D.N.Y.1983); *Visser v. Magnarelli,* 542 F.Supp. 1331, 1336 n. 8 (N.D.N.Y.1982); *see City of Newport v. Facts Concerts, Inc.,* 453 U.S. 247, 259, 101 S.Ct. 2748, 2755, 69 L.Ed.2d

616 (1981). A number of Courts of Appeals have held that *Owen* drew no distinction between a municipality's assertion of an absolute, as opposed to a good-faith, immunity of one of its employees, but none has considered the specific question here—the assertion of absolute immunity attaching in the first instance to a prosecutorial official. *See Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983) (absolute judicial immunity); *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1195–97 (5th Cir. 1981) (absolute legislative immunity); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 613 (8th Cir.1980) (same).

**30.** The Court does not consider the history of § 1983 or the state of the common law at the time of its passage. *See Imbler v. Pachtman,* 424 U.S. 409, 421 n. 18, 96 S.Ct. 984, 990 n. 18, 47 L.Ed.2d 128 (1976) (tracing history of prosecutorial immunity to 1896); *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1105 (W.D.N.Y. 1983).

**31.** *Imbler v. Pachtman,* 424 U.S. 409, 440, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976) (White, J., concurring in the judgment). Without considering the facts outside the pleadings in connection with the County's motion to dismiss, the Court

tives are not provided if the prosecutor is to be constantly distracted by civil actions under § 1983 that require a judge and jury to second guess the propriety of his acts performed in discharging his core responsibilities.[32]

Thus, even if, contrary to this Court's findings, the prosecutor's actions in plaintiff's criminal case did constitute an official County policy in violation of the Constitution, the Court holds that the County is immune from liability.

Judgment shall be entered in accordance with the foregoing.

So ordered.

nevertheless notes that here the prosecution apparently misfired only because the witnesses to the crime failed to appear at trial.

32. *See Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1105–06 (W.D.N.Y.1983).