Jack Colin WAGNER, Plaintiff,

v.

GENESEE COUNTY BOARD OF COMMISSIONERS, Genesee County Friend of the Court Robert W. Standal, Sr., Barry Joseph, Gary Vincent-Casner, John Doe and Richard Roe, Defendants.

No. 83–CV–8220–FL.

United States District Court,
E.D. Michigan, S.D.

April 23, 1985.

Roger J. McClow, Southfield, Mich., for plaintiff.

Patrick Kirby, Flint, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Having reviewed Magistrate Marc L. Goldman's Report and Recommendation concerning the motion to dismiss in this matter, the Court accepts and adopts the Report, with the exception of Section III, as its Memorandum Opinion herein.

The Report and Recommendation suggests that defendants' motion to dismiss be granted as to Counts I, II, and III, but denied as to Count IV. Plaintiff objects to Sections II and III of the Report, and defendant Robert Standal, Friend of the Court disagrees with Section IV.

■ The Court concurs with the Magistrate's characterization of the behavior of the individual defendants in procuring the writ of attachment. Although their investigatory skills may have been poor, the individual defendants were performing a judicial, and not an investigatory[1], function when they sought plaintiff's arrest. Therefore, their actions were properly cloaked by absolute quasi-judicial immunity. As the Magistrate thoughtfully explained, the facts of *McSurely v. McClellan*, 697 F.2d 309 (D.C.Cir.1982), are inapposite to those in this case.

The Court adopts the Magistrate's analysis in Section II.

Without addressing the merits of the Magistrate's analysis of the issue of state tort immunity in Section III of his Report, the Court finds that the Magistrate unnecessarily decided a pendent issue over which he had no independent basis for jurisdiction, the constitutional claims having been dismissed as against the individual defendants. *Mid-State Food Dealers v. City of Durand*, 525 F.Supp. 387 (E.D.Mich.1981). Counts I and II shall be remanded to the state court. Reconsideration of the question of governmental immunity on remand is particularly appropriate in light of the

---

1. In his response to the motion to dismiss, plaintiff complains that he was denied his right to prior notice and a hearing before he was arrested and deprived of his liberty on the basis of erroneous information. Although plaintiff now stresses that he is, in fact, suing on defendants' failure to properly investigate, he fails to show what constitutional right was violated by poor investigation.

Michigan Supreme Court's recent decisions on governmental tort immunity.

■ The Court also agrees with the Magistrate's conclusion that plaintiff is not suing the Friend of the Court, but Robert Standal in his official capacity as Genesee County Friend of the Court. The United States Supreme Court reached a similar result after the Magistrate issued his report. *Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). The Magistrate's assessment of the immunity issue is persuasive. A state judge's determination that the Friend of the Court is not a county agency for purposes of disclosure under the Freedom of Information Act[2] has little bearing on the issue whether the policies of the Friend of the Court are those of the county for purposes of 42 U.S.C. § 1983 liability. To the extent that Standal may also have been sued in his individual capacity, those claims must be dismissed pursuant to Section II of the Magistrate's Report.

For the reasons just stated, the Court accepts the Magistrate's Report and Recommendation, except for Section III, and adopts the Magistrate's findings and conclusions. The entire Report, attached hereto, is incorporated by reference.[3] Therefore, defendants' motion to dismiss is GRANTED in part and DENIED in part. Counts I and II are REMANDED to the Genesee County Circuit Court; Count III is DISMISSED; and Count IV shall be read as a claim against Robert Standal in his official capacity as Genesee County Friend of the Court.

IT IS SO ORDERED.

### MAGISTRATE'S REPORT AND RECOMMENDATION

#### December 5, 1984

On April 19, 1983, plaintiff, Jack Colin Wagner, instituted this action in Genesee County Circuit Court seeking money damages from the Genesee County Board of Commissioners and certain employees of the Office of the Genesee County Friend of the Court in connection with his arrest and incarceration on a writ of attachment issued based upon his alleged failure to pay child support. Included in the complaint was the claim that the defendants' actions violated the Civil Right Act of 1871, 42 U.S.C. § 1983, as well as state claims alleging false imprisonment and malicious prosecution. Defendants removed the matter to this Court on May 18, 1983. 28 U.S.C. § 1441. Presently before the Court is the motion of the individual defendants and the Genesee County Friend of the Court, in his official capacity, for dismissal.

The essential facts of this case are not in dispute. On December 17, 1975, the Honorable Thomas L. Yeotis, Circuit Judge for the County of Genesee, State of Michigan, signed a filiation order finding that plaintiff was the father of one Amie Jo Mitchell, and ordering that he pay child support in the amount of twenty dollars ($20.00) per week. The child support payments were required to be made to the Genesee County Friend of the Court for distribution to the proper recipients. The complaint alleges that in early 1976, plaintiff became engaged to Brenda Mitchell, the mother of Amie Jo Mitchell, and as a result of the engagement, ceased making support payments in April of 1976. Plaintiff and Brenda Mitchell were married in July, 1976 and have lived together as husband and wife since that time.

Plaintiff claims that prior and subsequent to his marriage to Brenda Mitchell, he was in constant contact with unknown employees of the Friend of the Court. He states that he informed these employees

**2.** Defendants appended to their objections to the Magistrate's Report a copy of a state court opinion analyzing the status of the Friend of the Court with respect to disclosure under the Freedom of Information Act. This was in support of their contention that the Friend of the Court is a sort of judicial officer entitled to quasi-judicial immunity for acts performed within the scope of his official authority.

**3.** Section III of the incorporated Report, although not adopted, is included to make this memorandum opinion and order intelligible.

that he was engaged to and later married to the mother of the child. He further claims that he was informed by one unknown employee of the Friend of the Court, defendant John Doe, that the marriage would resolve any problems concerning child support.

In 1981, plaintiff was informed, in a letter from the Friend of the Court, that he was several thousand dollars in arrears in child support payments. Plaintiff claims he contacted a second unknown representative of the Friend of the Court (defendant Richard Roe) and informed him that he had been married to the mother of the child since 1976. Defendant Roe allegedly took the information and stated that he would "straighten everything out."

In 1982, plaintiff again received a letter from the Friend of the Court stating that he owed $6,000.00 in child support payments. Plaintiff contacted defendant Gary Vincent-Casner, an employee of the Genesee County Friend of the Court, and again provided the information concerning his marriage. Plaintiff alleges that defendant Vincent-Casner informed him that the matter would be investigated and at a later time, assured plaintiff that he would not be arrested. Nonetheless, on August 12, 1982, defendant Robert Standal, the Genesee County Friend of the Court prepared a "Petition and Order for Attachment" seeking the arrest of plaintiff for failure to pay child support, alleging accumulated arrearages of over $6,000.00. The Order of Attachment was signed by Judge Yeotis. Pursuant to the Order of Attachment, plaintiff was arrested on September 1, 1982 and incarcerated overnight in the Tuscola County Jail. The next morning he was transported to the Genesee County Jail where an unknown individual appeared with an order, signed by Judge Harry McAra, ordering plaintiff's release and foregoing all arrearages except for $271.50.

Plaintiff alleges that the Office of the Friend of the Court and the individual defendants were aware of these facts and nonetheless maliciously, recklessly and or negligently withheld them, thereby causing the Circuit Judge to issue the writ of attachment. He further alleges that the defendants, acting under color of state law, acted in a manner which denied him his liberty without due process. Moreover, plaintiff claims that the Office of the Friend of the Court in Genesee County and the Genesee County Board of Commissioners implemented and engaged in an unconstitutional policy which resulted in the arrest of individuals allegedly in arrears in support payments without notice and hearing, in violation of the due process clause of the Fourteenth Amendment to the Constitution. The individual defendants have filed a motion to dismiss both the state and federal claims, contending that they are entitled to absolute quasi-judicial immunity. Robert Standal, in his official capacity as Genesee County Friend of the Court, has also filed a motion to dismiss on the basis of quasi-judicial immunity.

## II.

No immunities are expressly recognized in the Civil Rights Act of 1871. 42 U.S.C. § 1983. However, the Supreme Court has concluded that an immunity that was "well established at common law at the time § 1983 was enacted and ... [is] compatible with the purposes of the Civil Rights Act," will be recognized under the Act. *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). Utilizing this analysis, the Court has held that judges are absolutely immune from suit under § 1983 under the longstanding rule of judicial immunity. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1872).

The Supreme Court has also recognized a quasi-judicial absolute immunity for other non-judicial officers whose official duties constitute "integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Thus, prosecutors have been ac-

corded a quasi-judicial immunity for initiating and conducting a criminal prosecution. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Similarly, certain federal agency officials were accorded absolute quasi-judicial immunity in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) because "[t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to or move forward with a criminal prosecution." 438 U.S. at 515, 98 S.Ct. at 2915. Various United States Courts of Appeals have held that absolute quasi-judicial immunity applies to other officials whose activities are intimately related to the judicial process. *Walden v. Wishengrad,* 745 F.2d 149 (2d Cir.1984) (Attorney for Department of Social Services); *Kurzawa v. Mueller,* 732 F.2d 1456 (6th Cir.1984) (employees of State Department of Social Services); *Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir. 1980) (commissioners appointed by Court to hold partition sale); *Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970), *cert. denied,* 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (probation officers). See also, *Annot.,* 44 A.L.R.Fed. 225 (1979). In doing so, the Courts have followed the well established rule that "immunity analysis rests on functional categories, not on the status of the defendant." *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Whether particular office holders have quasi-judicial immunity in their acts depends on an analysis of the activities in which they were engaged and the relationship of those activities to the judicial process. *Ashbrook v. Hoffman, supra,* 617 F.2d at 476. The need for absolute immunity must be closely scrutinized before the Court will find that a government official is protected from liability by an impenetrable shield. *Walden v. Wishengrad, supra,* 745 F.2d at 152. An examination of the functions of the Friend of the Court is thus in order to determine whether its employees enjoy a quasi-judicial absolute immunity.

The Friend of the Court is currently considered an employee of the Circuit Court, performing its duties under the "discretion and supervision of the chief judge." M.C.L.A. § 552.503. Its primary duties include interviewing the parties in a divorce proceeding, making recommendations as to custody, visitation, and child support, and aiding the Court in enforcing all orders regarding those matters. M.C.L.A. § 552.-501 *et seq.* At the time of the events which gave rise to this law suit, the Friend of the Court was appointed by the Governor upon the recommendation of the Circuit Judges of the County. M.C.L.A. § 552.251 *et seq.,* repealed by P.A.1982, No. 294, § 33, Eff, July 1, 1983. However, the function of the office was the same. As defined by the statute, the purpose of the office, in part, was:

> ... enforcing payments of all delinquent payments duly ordered and decreed by said circuit courts for the support, maintenance and education of dependent minor children.... M.C.L.A. § 552.251 (repealed).

Among the statutory duties of the Friend of the Court under the repealed statute was:

> To bring into court when necessary by citation or otherwise all persons who are delinquent in making said payments.... M.C.L.A. § 552.252 (now repealed).

The Friend of the Court was compensated for his work from the general fund of the county. M.C.L.A. § 552.251 (repealed). The Michigan General Court Rules provide that "the friend of the court shall assume responsibility for initiating and carrying on proceedings to enforce all support, visitation, and custody orders and judgments." GCR 1963, 727.3. In this case, the Friend of the Court petitioned the Court for an order of attachment pursuant to M.C.L.A. § 552.152, which provides that:

> When any decree or order shall stipulate payments to be made to the clerk of the court, or to the friend of the court, and any of such payments shall be in default, the party prejudiced may make a motion before such court ... and the court may forthwith issue an attachment to arrest the party in default....

The authority for the Friend of the Court to pursue this remedy is found in GCR 1963, 727.4 (1983). That court rule outlines the procedures for bringing individuals delinquent in support payments before the Court. Subparagraph Five (5) of that provision provides that, at any time, the Friend of the Court may petition for an order of immediate arrest, GCR 1963, 727.4(5). The issue in this case is whether the Friend of the Court employees in their individual capacities are entitled to absolute quasi-judicial immunity for wrongfully or negligently electing to seek an order of attachment.

The issue of whether the employees of the office of the Friend of the Court, as constituted under Michigan law, are entitled to quasi-judicial immunity has been considered by the United States Court of Appeals for the Sixth Circuit as well as the Courts of this judicial district. In *Johnson v. Granholm,* 662 F.2d 449 (6th Cir.1981), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982), the Court examined the Michigan statutes which prescribe the duties and responsibilities of the Friend of the Court and concluded that employees of the office of the Friend of the Court were absolutely immune from suit under § 1983. Similar results were reached by Judge James Harvey in *Aker v. Thomms,* No. 77–40114 (E.D.Mi. Nov. 28, 1978) and by Judge Stewart Newblatt in *Pope v. Rodgers,* Nos. 82–40286, 82–40287, 82–40312 (E.D.Mi. Oct. 8, 1982). Thus, it is clear that the individual employees of the Friend of the Court, when acting within the scope of their quasi-judicial capacities, are entitled to absolute quasi-judicial immunity. Plaintiff contends, however, that defendants were performing a prosecutorial enforcement function, which was investigatory in nature, and are therefore not entitled to absolute quasi-judicial immunity. This contention is meritless, both factually and legally.

■ It is well established that a prosecutor is entitled to absolute immunity for initiating and conducting a criminal proceeding. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In

*Imbler,* however, the Supreme Court left open the question of whether absolute immunity would be available to a prosecutor acting in his administrative or investigative capacity. Subsequent Circuit Court decisions have accorded a prosecutor only a good faith qualified immunity for administrative and/or investigative acts. See, e.g., *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983); *McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir.1982); *Mancini v. Lester,* 630 F.2d 990 (3d Cir.1980).

In support of his contention that the Friend of the Court's office was acting in a prosecutorial investigative manner when it petitioned for plaintiff's arrest, plaintiff relies on the opinion of the United States Court of Appeals for the District of Columbia in *McSurely v. McClellan, supra* and contends that the act of seeking a warrant for an arrest (like petitioning for an order of attachment) falls outside the scope of absolute prosecutorial immunity. The facts of *McSurely* are inapposite to those presented in this case, and therefore reliance on *McSurely* is misplaced. In *McSurely,* the defendant prosecutor had participated in public meetings for the purpose of preventing plaintiff from exercising his First Amendment rights, participated in a raid upon plaintiff's home, illegally seized some documents, and prepared search and arrest warrants. The preparation of an arrest warrant was but the culmination of a series of illegal investigative acts of the prosecutor. The Court found that he was entitled only to a qualified immunity for those illegal investigative acts.

■ It is clear, however, that a prosecutor is entitled to absolute immunity from suit under § 1983 where his only wrongful act was causing the arrest of the accused. In *Macko v. Bryon,* 641 F.2d 447 (6th Cir. 1981), an action was brought against a prosecutor under 42 U.S.C. § 1983 for maliciously causing plaintiff to be indicted and arrested. The Court rejected plaintiff's contention that these were investigative acts and held that a prosecutor was entitled to absolute immunity under *Imbler v. Pachtman, supra.* Similarly, in *Lerwill v.*

*Joslin,* 712 F.2d 435 (10th Cir.1983), the Court held that a prosecutor was absolutely immune from suit under § 1983 for seeking an arrest warrant. "Both before and after *Imbler,* a prosecutor's absolute immunity has extended to his procurement of an arrest warrant." 712 F.2d at 437. *See also Siano v. Justices of Massachusetts,* 698 F.2d 52 (1st Cir.1983), *cert. denied,* 104 S.Ct. 80; *Norton v. Liddel,* 620 F.2d 1375 (10th Cir.1980). Therefore, even if the function of the Friend of the Court employees is equated to those of a prosecutor rather than an arm of the judiciary, absolute quasi-judicial immunity nonetheless is applicable.

It may also be argued that a judicial officer, like the Friend of the Court, is not entitled to quasi-judicial immunity for prosecutorial acts under *Sevier v. Turner,* 742 F.2d 262 (6th Cir.1984). In *Sevier,* the Court held that a Juvenile Court Judge, a Juvenile Court referee, and an employee of the Department of Human Services were not entitled to absolute immunity for initiating civil contempt proceedings to extract "purge payments" from fathers who were behind in child support payments, where portions of the "purge payments" were used to pay the salaries of the defendants. The Court concluded that initiating accusatory proceedings was a prosecutorial act not normally performed by a judicial officer, and that absolute judicial immunity was inapplicable. *Id.* at 271–272. *See also, Lopez v. Vanderwater,* 620 F.2d 1229 (7th Cir.1980), *cert. dismissed,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491.

I suggest, however, that *Sevier* should be limited to its specific and peculiar facts. The Supreme Court has determined that absolute quasi-judicial immunity will apply to officials who need to be protected from subsequent suit for exercising discretion in their official capacity. Thus, prosecutors were accorded absolute immunity for deciding to initiate criminal proceedings because a qualified immunity would hamper the effectiveness of the prosecutor. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Similarly, the Court accorded absolute immunity to agency officials in deciding to initiate administrative proceedings because the officials were "performing certain functions analogous to those of a prosecutor." *Butz v. Economou,* 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978). "We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment." 438 U.S. at 516, 98 S.Ct. at 2915.

In *Kurzawa v. Mueller,* 732 F.2d 1456 (6th Cir.1984), employees of the Michigan Department of Social Services wrongfully initiated proceedings to remove a child from his parents' home. The Court held that the defendants were entitled to absolute immunity under *Briscoe, Butz* and *Imbler* because "they must be able to perform the necessary tasks to achieve this goal [of protecting children] without worry of intimidation and harassment from dissatisfied parents." 732 F.2d at 1458. *See also, Walden v. Wishengrad, supra.*

In this case, the employees of the Friend of the Court acted within the scope of their statutory functions in seeking an order of attachment for non-payment of child support. They were clearly performing their statutory duty to enforce child support payments in a manner which was specifically authorized by statute. While plaintiff's allegations, if assumed to be true, indicate extreme negligence and malfeasance on the part of the employees of the office, there can be no question that the defendants were not acting in a "clear absence of all jurisdiction." *Stump v. Sparkman, supra* 435 U.S. at 357, 98 S.Ct. at 1105. *Sevier v. Turner, supra,* 742 F.2d at 271. Their actions were within their jurisdiction and can only be described as an integral part of the judicial process in the enforcement of Court orders concerning child support payments. Error or negligence in performing these acts will not strip the defendants of that immunity. Like the defendants in *Kurzawa, supra* and *Walden, supra,* the Friend of the Court and its employees must be allowed to perform this duty "without the worry of intimidation and harassment." Similarly, the act of petitioning for the writ

of attachment cannot be characterized as administrative or investigatory. The filing of the writ and request for a warrant were judicial in nature. I, therefore, suggest that the individual defendants are entitled to absolute quasi-judicial immunity. Accordingly, I respectfully recommend that the individual defendants motion to dismiss the claim under 42 U.S.C. § 1983 contained in Count Three of the complaint be granted.

### III.

The individual defendants have also moved this Court to dismiss Count One and Count Two of the complaint. Count One alleges a state tort claim for false arrest and false imprisonment. Count Two of the complaint alleges a state tort claim for malicious prosecution. Having already determined in Part II of this report that the individual defendants were acting within the scope of their statutory functions and in a quasi-judicial capacity, it is the opinion of the undersigned that the individual defendants are immune from liability under state law. *Belt v. Ritter*, 385 Mich. 402, 189 N.W.2d 221 (1971); *Davis v. Eddie*, 130 Mich.App. 284, 343 N.W.2d 11 (1983); *Bloss v. Williams*, 15 Mich.App. 228, 166 N.W.2d 520 (1968); *Walker v. Cahalan*, 542 F.2d 681, 684–85 (6th Cir.1976); *Link v. Greyhound Corp.*, 288 F.Supp. 898–900 (E.D.Mi. 1968). Accordingly, it is respectfully recommended that Counts One and Two of the complaint be dismissed.

### IV.

Defendant has further moved for dismissal on behalf of the Friend of the Court in his official capacity, based upon absolute quasi-judicial immunity. In response, plaintiff claims that dismissal would be inappropriate with respect to Robert Standal in his official capacity as Friend of the Court. In doing so, plaintiff characterizes the Office of the Friend of the Court, as well as the position of Friend of the Court as a local government unit. Based upon that characterization, plaintiff claims that the Friend of the Court is not entitled to either absolute or qualified immunity under the Supreme Court decisions in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) and *Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). These two cases stand for the propositions that local governmental units are included as "persons" under the Civil Rights Act and that they are not entitled to claim qualified immunity as a defense in an action under 42 U.S.C. § 1983.

Initially, plaintiff's contention that the Office of the Friend of the Court is a local government unit which is subject to suit cannot withstand close scrutiny. As noted, the Friend of the Court is a statutorily created office. At the time of this incident, Mr. Standal had been appointed to the office by the governor and was compensated through the general fund of the County for which he served. His functions and duties were well defined by statute and his expenses were derived from the general budget of the county. I suggest that the Friend of the Court is not an entity subject to suit under the Civil Rights Act as it is nothing more than an agency of a municipal government unit. *Hancock v. Washtenaw County Prosecutor's Office*, 548 F.Supp. 1255 (E.D.Mi.1982), *Ragusa v. Police Dept.*, 530 F.Supp. 814 (N.D.Ill.1981).

It must further be pointed out that it is unclear whether the Office of the Friend of the Court for Genesee County was named as a defendant in this action. In naming Robert Standal in the complaint, plaintiff uses the term, "Genesee County Friend of the Court Robert W. Standal, Sr.". Whether the phrasing was meant to be descriptive or a designation that Mr. Standal was being sued in his official capacity is unclear. However, Count IV of the complaint alleges that Standal and the Genesee County Board of Commissioners instituted a policy and practice of arresting individuals in arrears in child support without first providing those persons the fundamental due process rights of notice and hearing (Par. 40—complaint). This language is indicative

of an intention on the part of plaintiff to seek damages against Mr. Standal for acts committed within the parameters of his appointed office. I, therefore, suggest that with respect to Count IV, the allegation of unconstitutional official policies and acts are sufficient to conclude that Mr. Standal is being sued in his official capacity as the Friend of the Court. It is therefore necessary to determine the capacity of Mr. Standal to be sued under § 1983 and what immunities, if any, apply.

Plaintiff correctly argues that under *Monell* and *Owen*, there is no qualified immunity for municipal officials acting in their official capacity. An action for damages against a county official in his official capacity is in essence an action against the County. Since under *Owen* the county would not have a good faith immunity defense, neither would a county official sued in his official capacity. *Calkins v. Blum,* 675 F.2d 44, 45 fn. 2 (2d Cir.1982); *Universal Amusement Co. v. Hofheinz,* 646 F.2d 996 (5th Cir.1981); *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980); *Monell v. Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Alexander v. Polk,* 572 F.Supp. 605 (Pa.1983). As the applicability of immunity principles to an individual sued in his official capacity is dependent upon the availability of immunity as a defense for the government entity, in order to determine whether Mr. Standal, as a county official, is immune from suit in his official capacity, it is necessary to determine whether a government entity may assert absolute immunity from liability to a claim brought under the Civil Rights Act.

In *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court held that a municipality has no good faith qualified immunity from liability under the Civil Rights Act for its constitutional violations and may not assert the good faith of its officers as a defense to such liability. This holding was predicated upon an analysis of the statute, its legislative history and considerations of public policy. While an extended discussion of the historical background of the Civil Rights Act is not necessary here, it is sufficient to note that the Court found that the doctrine of municipal immunity was not so firmly rooted in common law so as to presume that Congress intended that such immunity would continue to exist in light of the expansive language of the Civil Rights Act. *Id.,* at 638–650, 100 S.Ct. at 1409–1415.

More importantly, the Court further found that public policy did not warrant providing a good faith qualified immunity to municipalities. The Court recognized that the Civil Rights Act was designed to provide protection to those wronged by the misuse of power of those acting under the authority of state law. The injustice of permitting local governments to escape liability for injuries it had caused led the Court to reject even a qualified immunity for local government units. *Id.* at 651, 100 S.Ct. at 1415. Also influencing the Court in its decision was the existence of qualified immunity for agents of the governmental unit. *See, Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Allowing the municipality to also assert a good faith defense would leave victims of municipal malfeasance remediless. The threat of imposition of damages upon the government while providing good faith immunity for the individual was seen as a way to protect all societal interests. Compensation would be provided to those victims who had suffered actual wrongs, the offending official would be protected from personal liability when acting in good faith, thereby not inhibiting him or her from the competent performance of duty, and the threat of damages would act as a deterrent to those in policymaking positions to institute rules and programs "to minimize the likelihood of unintentional infringements on constitutional rights." *Id.,* 445 U.S. at 651–652, 100 S.Ct. at 1415–1416. Moreover, in light of the Court's decision in *Monell, supra,* the public would only be forced to pay the costs of only those injuries inflicted by the execution of a government policy or custom. Thus, the Court reasoned, the arguments in favor of good

faith immunity for local government units were far outweighed by the need to provide a method of redress for victims of grievous governmental policies.

*Owen,* however, does not specifically answer the question posed in this case for we are not concerned with the issue of good faith qualified immunity but with acts taken by individuals who are absolutely immune from liability. Despite the focus in *Owen* on qualified good faith immunity, the majority of courts which have considered the issue of municipal absolute immunity have held that local government units do not enjoy such immunity from liability even when their agents, in an individual capacity, have been found to be absolutely immune.

In the context of civil rights actions brought pursuant to local legislative action, primarily involving zoning regulations, a number of courts have assumed that a municipality would remain liable under *Monell* and *Owen* even if the individual defendants were found to be absolutely immune due to their legislative function. *See, Lake County Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981); *Bruce v. Riddle,* 631 F.2d 272 (4th Cir.1980); *Gorman Towers v. Bogoslavsky,* 626 F.2d 607, 613, fn. 8 (8th Cir. 1980). *Searington Corp. v. Village of North Hills,* 575 F.Supp. 1295, 1297–1298 (E.D.N.Y.1981); *Tolbert v. County of Nelson,* 527 F.Supp. 836, 838–839 (W.D.Va. 1981); *Heiar v. Crawford County, Wis.,* 558 F.Supp. 1175, 1180–1181 fn. 12 (W.D. Wis.1983); *Goldberg v. Village of Spring Valley,* 538 F.Supp. 646, 650 (S.D.N.Y. 1982); *Dusanenko v. Maloney,* 560 F.Supp. 822, 827–828 (S.D.N.Y.1983).

The cases which consider absolute quasi-judicial immunity are fewer in number but the analysis utilized by the Courts has been the same. In *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675 (9th Cir.1984), a prisoner brought an action which included claims under 42 U.S.C. § 1983 against two assistant district attorneys and the county for which they were employed. In this case, the district attorneys had seized plaintiff's mobile home and possessions contained therein as part of a murder investigation. The mobile home was released as evidence two weeks after it was seized. Following plaintiff's conviction on the murder charge, he brought an action alleging that his civil rights were violated by the moving of his mobile home which resulted in some damage as well as the loss of some personal possessions which he claimed were exculpatory in nature.

The Court found that the assistant district attorney who had ordered seizure of the mobile home was acting in a quasi-judicial capacity and therefore was entitled to absolute immunity. However, with respect to the county, the Court stated:

> Although local governments cannot be held liable under § 1983 on a theory of *respondent superior,* they can be held liable for constitutional deprivations caused by their policies and customs. *[Monell v. New York Dept. of Social Services].* They enjoy no immunity under § 1983 for damages. *[Owen v. City of Independence].* 723 F.2d at 681. (Emphasis added).

Finding no inference in the pleadings that such a policy existed, the Court affirmed the lower court's grant of summary judgment for the defendant county. However, the expansive reading of *Owen* is significant for purpose of the matter currently before the Court. *See also, Huemmer v. Mayor and City Council,* 632 F.2d 371, 372 (4th Cir.1980).

In *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983), the plaintiffs, former liquor licensees, brought an action against a village, local legislators, and local judicial officers under 42 U.S.C. § 1983 for acts causing suspension of their licenses and subsequent legislative action which resulted in loss of those licenses. On appeal from the district court's grant of summary judgment to all defendants, the Court found that the local officials who were acting in a legislative or judicial capacity

were entitled to absolute immunity from liability. 704 F.2d at 951–53. However, with respect to the village itself, the Court noted that the complaint stated that the alleged unconstitutional acts were orchestrated at the highest level of government of the village and were accordingly a policy of the village. Noting that, if true, the village would be liable, the Court commented upon the claimed absolute immunity of the village:

> The official acts of municipal policy makers are acts of the municipality for purposes of section 1982 liability. *See, Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir.1980); *Black v. Stephens,* 662 F.2d 181, 191 (3d Cir.1981). And the municipality's liability for such acts extends to acts for which the policymaking officials themselves might enjoy absolute immunity because the acts were legislative or judicial in character. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), so held with regard to the qualified immunity of municipal officers for their executive acts and we cannot see why there should be a different result here just because these officers' immunity is absolute rather than qualified. The rationale of *Owen,* that holding the municipality liable creates incentives to avoid illegal behavior without at the same time overdeterring individuals by the threat of crushing personal liability, 445 U.S. at 655–57, 100 S.Ct. at 1417–18, applies with as much force to legislative and judicial as to executive officers. .

> *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), which holds that persons who conspire with a judge in violation of section 1983 cannot claim the judge's absolute immunity from suit, supports this reading of *Owen.* "In terms of undermining a judge's independence and his judicial performance, the concern that his conduct will be examined in a collateral proceeding ... in which he cannot be held liable for damages and which he need not defend, is not of the same order of magnitude as the prospects of being a defendant in a

damages action...". 449 U.S. at 31, 101 S.Ct. at 188. An action against the municipality is just such a "collateral proceeding." 704 F.2d at 953–54.

On the other hand, at least two district courts have opined that a municipal governmental unit is absolutely immune from liability for acts performed by employees who are acting in a quasi-judicial capacity and who, accordingly, are entitled to absolute immunity. *Armstead v. Town of Harrison,* 579 F.Supp. 777 (S.D.N.Y.1984); *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D.N.Y.1983).

In *Armstead,* the Court held that a municipality may assert the absolute immunity of its prosecutorial employees acting within the scope of their responsibilities. In doing so, the Court found that the issue was not controlled by *Owen.* While recognizing that a number of Courts of Appeals had held otherwise, albeit not in the context of a prosecuting official, the Court stated that the costs to the public from frivolous claims of malicious prosecution would far outweigh the minimal deterrent effect on actual misconduct. 579 F.Supp. at 782. It must be noted, however, that the Court in *Armstead* had found earlier in its opinion that the acts of the prosecutor had not been shown to be under color of some official policy of the town. *Monell v. City Dept. of Social Services, supra.* Accordingly, the alternative finding of absolute immunity for the municipality must be considered *dicta.*

*Whelehan v. County of Monroe, supra,* presents a factual pattern which most closely resembles that presented in the instant case. This was an action against numerous employees of the Monroe County Sheriff's Department and Department of Social Services, as well as the County under 42 U.S.C. § 1983 for alleged unconstitutional acts arising from official policies of the defendant County. The action arose during an investigation into allegations that plaintiff had sexually abused his child. After finding that the individual employees of the department of Social Services were entitled to absolute "prosecutorial" immu-

nity under *Imbler v. Pachtman, supra,* and that the claim against the County should be dismissed since the complaint did not sufficiently allege that the complained of acts were part of an official policy or custom, the Court, acknowledging that its comments were *obiter dictum,* examined the *Owen* decision with respect to absolute immunity. The Court found that *Owen* only applied to good faith qualified immunity and that the question of whether absolute immunity should be extended to municipalities was an open question. Recognizing that the Supreme Court's historical analysis of municipal immunity undercut the argument that the County would have been immune at common law at the time the Act was passed, the Court rested its decision on the public policy implications of exposing municipalities to liability for acts of its prosecutorial officials. Relying on *Imbler v. Pachtman, supra,* the Court concluded that the danger of inhibiting prosecutorial officials in the exercise of their public decision making and the absence of any effective deterrence in imposing municipal liability far outweighed any benefit which could be derived from imposing liability on municipalities for the acts of those officials. 558 F.Supp. at 1106–1108.

Even though *Owen* does not talk specifically in terms of absolute immunity, I suggest that the rationale underlying the decision is as applicable in the context of absolute immunity as in the context of good faith qualified immunity. Accepting the conclusion that there exists no historical tradition of immunity for municipal corporations, the legislative purpose behind the Civil Rights Act and public policy considerations which were examined in *Owen* are equally applicable in an analysis of municipal absolute immunity. If the act's purpose is to provide protection to those persons wronged by the misuse of power exercised under state law, *Owen,* 445 U.S. at 650, 100 S.Ct. at 1415, it clearly would result in a frustration of that purpose to deny a remedy to those who were, in fact, injured. Moreover, as was found in *Owen* with respect to good faith qualified immunity, those dangers expressed in *Scheuer v.*

*Rhodes, supra,* upon which the doctrines of official immunity rest, would not be implicated by extending that holding to those cases in which absolute immunity is raised. First, as in *Owen,* no public official would be personally responsible to pay a damage award. And, as *Owen* recognized, there is nothing unjust in requiring a municipality to compensate an individual for the wrongs it has committed. The second danger expressed in *Scheuer,* that of deterring an official's willingness to execute his office, is similarly not seriously implicated in that the threat of employee liability will not necessarily deter the exercise of judgment and may, in fact, promote more reasoned and careful decision making. *Owen,* 445 U.S. at 655–656, 100 S.Ct. at 1417–1418.

Those dangers expressed by the Courts in *Armstead* and *Whelehan* are not sufficiently compelling to persuade this writer that societal interests militates toward a policy providing that municipalities be accorded absolute immunity for the wrongful acts of its officials who are acting in judicial or quasi-judicial capacities. While it is true that extending *Owen* cases involving prosecutorial decision making will increase litigation costs for municipalities, that cost is far outweighed by the need to provide redress for actual wrongs committed under authority of state law.

Moreover, the inability of an individual to recover on a *respondent superior* theory is an important safeguard for municipalities which sufficiently protects them from unfounded claims of liability. In order to impose liability on the local governmental units, a plaintiff would be required to identify the offending policy, show that the policy in fact caused the wrong alleged, and connect the policy to the government entity. *Monell v. Department of Social Services, supra; Pembaur, M.D. v. City of Cincinnati,* 746 F.2d 337, 341 (6th Cir. 1984), *Rowland v. Mad River School District,* 730 F.2d 444, 451 (6th Cir.1984). This is a factor not considered by the Courts in *Armstead* and *Whelehan* which severely undercuts their cost-benefit analysis. The requirement that a plaintiff show that he

was injured as a result of an act which was committed as a result of official policies protects the municipality from an unfounded imposition of damages, yet satisfies the need to insure that the victim of an abuse of governmental authority is compensated for his injury. This principle of equitable loss spreading is clearly as applicable to an action such as this as to an action like that presented in *Owen*.

In this case, plaintiff claims that there existed a policy and custom of Genesee County instituted by defendant Robert Standal in his official capacity as Genesee County Friend of the Court, which resulted in a loss of liberty without notice or hearing in violation of the due process clause of the Fourteenth Amendment. If it is shown that such a policy existed; that Robert Standal was an individual whose acts represented official policy, and that execution of this policy resulted in a violation of plaintiff's civil rights, some compensation should be available to him. The principles articulated in *Owen* clearly support this conclusion. Accordingly, I suggest that the defense of quasi-judicial absolute immunity is not available to either the county nor Mr. Standal, in his official capacity, and respectfully recommend that the Court deny defendants' motion to dismiss as to Robert Standal in his official capacity of Genesee County Friend of the Court.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, parties are hereby notified that within 10 days after being served with a copy of this recommendation they may serve and file specific, written objections to the proposed findings and recommendations. Further, either party may respond to another party's objections within 10 days after being served with a copy thereof.