**Beatrice WALDEN, Plaintiff-Appellant,**

**v.**

**Marcia H. WISHENGRAD, Monroe County Department of Social Services, County of Monroe, Defendants-Appellees.**

**No. 1382, Docket 83–9009.**

United States Court of Appeals,
Second Circuit.

Argued June 22, 1984.

Decided Sept. 18, 1984.

Samuel F. Prato, Rochester, N.Y., for plaintiff-appellant.

Nira T. Kermisch, Rochester, N.Y. (John D. Doyle, County Atty., Rochester, N.Y. of counsel), for defendants-appellees.

Before MESKILL, KEARSE and CARDAMONE, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an order of the United States District Court for the Western District of New York, Telesca, *J.*, granting the motion for summary judgment by the defendants, Marcia H. Wishengrad, the Monroe County Department of Social Services (the Department) and the County of Monroe (the County), in plaintiff Beatrice Walden's action for damages brought under 42 U.S.C. § 1983 (1982). *Walden v. Wishengrad*, 573 F.Supp. 1115 (W.D.N.Y.1983). We affirm.

## BACKGROUND

Walden is a former child protective caseworker with the Department. She left the Department in July, 1979. Her responsibilities consisted primarily of investigating cases of child abuse and neglect. Wishengrad is an attorney employed by the Department, concentrating in child protective work and foster care. Her duties require her to represent the interests of the Department and its employees in Family Court.

In August 1979, Wishengrad was representing the Department in a case involving the termination of parental rights. Walden had participated in the investigation of the matter prior to her separation from the Department. On August 8, Walden was served with a subpoena requiring her to appear in Family Court on August 13 and on any recessed or adjourned date in connection with the case. Walden appeared in court on the 13th and testified as required. However, the case was adjourned before she was cross-examined.

The case was subsequently scheduled to resume on March 6, 1980. Wishengrad learned of the rescheduled date in advance, possibly as early as December 7, 1979. Nonetheless, no attempt was made to contact Walden until March 5. Wishengrad and her legal assistant, Joseph Dennison, tried repeatedly to call Walden on March 5 to arrange for her to appear in court the following day. Their efforts were unsuccessful.

Wishengrad finally reached Walden at home at approximately 9:00 a.m. on the morning of March 6. Wishengrad told Walden to appear in court as soon as possible because the proceeding was being reopened and opposing counsel wished to cross-examine her. Walden refused to appear on such short notice, stating that she was expecting a furniture delivery and she had to pick up a new car. Wishengrad said that she knew an official of the furniture company and that she could try to arrange the delivery to accommodate Walden's schedule, but Walden refused the offer. Wishengrad warned Walden that Judge Bonadio, the presiding judge in the Family Court proceeding, would be displeased with her refusal to appear and might send the police or the sheriff to arrest her. Walden stated, in essence, that the judge would do as he pleased.

Wishengrad's secretary and legal assistant attempted to contact Walden during the afternoon of March 6 to see if she had completed her business, but they were unable to reach her at home. Wishengrad informed Judge Bonadio that Walden would not appear that day, and the proceeding was adjourned until March 10.

Wishengrad called Walden on the morning of March 7 to inform her of the new date. Walden did not definitely state whether she would appear on March 10. She informed Wishengrad that she had contracted a sore throat and that she probably

would not appear if her condition worsened. Wishengrad reminded Walden that Judge Bonadio would note her absence. Walden replied that the Judge would do as he saw fit.

Wishengrad reported this conversation to Judge Bonadio later that day. Judge Bonadio asked Wishengrad if she had any reason to believe that Walden would not appear on March 10. She replied in the affirmative basing her opinion on Walden's failure to appear on the previous day and on the difficulty she had reaching Walden by telephone. The Judge ascertained that the subpoena required Walden to be available on the adjourned date and then in response to Wishengrad's request, directed that a warrant issue, to be served on the morning of March 10, to ensure Walden's presence in Family Court on that day.

Walden was arrested by a deputy sheriff at about 9:00 a.m. on March 10. She was placed in a cell in the Rochester Public Safety Building for approximately one hour and was then taken in handcuffs to Family Court. Upon her arrival, the handcuffs were removed and her police escort left the area. Walden then completed her testimony and left the court.

In May 1980, Walden brought this action against Wishengrad, the Department and the County pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of New York. She alleged that her arrest violated the Fourth, Sixth and Fourteenth Amendments. She claimed that Wishengrad had acted with "malice" in causing her arrest and that Wishengrad's acts were "attributable" to the Department and the County "through operation of the law." Walden sought

$250,000 actual damages and $250,000 punitive damages.

The district court granted the defendants' motion for summary judgment on November 10, 1983. 573 F.Supp. 1115. The court held that Wishengrad was cloaked with absolute immunity for actions performed within the scope of her duties and that the Department and the County could not be liable on a *respondeat superior* theory. This appeal followed.

## DISCUSSION

The primary question on appeal is whether the district court correctly determined that Wishengrad is cloaked with "absolute immunity" for her decision to request Walden's arrest warrant from Judge Bonadio.[1] Walden maintains that Wishengrad is only entitled to "qualified immunity" and thus may be liable if her actions were taken in bad faith. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982). She argues that summary judgment was improper under the qualified immunity standard because questions of fact exist as to whether Wishengrad acted in good faith.

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a state prosecutor is absolutely immune from liability in a section 1983 action for damages for his conduct "in initiating a prosecution and in presenting the State's case." *Id.* at 431, 96 S.Ct. at 995. The Supreme Court indicated in *Butz v. Economou,* 438 U.S. 478, 515–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978), that "officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Id.* at 515,

---

1. Wishengrad argues that even though she was employed by the Department she was not acting under color of state law when she requested the arrest warrant. We disagree. *Compare Cate v. Oldham,* 707 F.2d 1176, 1188 n. 9 (11th Cir. 1983) (State Attorney acted under color of state law where he instituted malicious prosecution action), *with Masel v. Industrial Commission of Illinois,* 541 F.Supp. 342, 344 (N.D.Ill.1982) (private law firm representing village did not act under color of state law). *See also Polk County*

*v. Dodson,* 454 U.S. 312, 320–22, 102 S.Ct. 445, 450–52, 70 L.Ed.2d 509 (1981); *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–187, 66 L.Ed.2d 185 (1980). There is no dispute that Wishengrad's actions were within the scope of her duties as an attorney representing the Department and its employees in Family Court. In light of our decision that Wishengrad is entitled to absolute immunity, we need not address the question whether or not Walden's arrest was unconstitutional.

98 S.Ct. at 2915. *See also Harlow v. Fitzgerald,* 457 U.S. at 807, 102 S.Ct. at 2732 (*Butz* applies to "prosecutors and similar officials"). In *Betts v. Richard,* 726 F.2d 79 (2d Cir.1984), we held that, under *Imbler,* a state's attorney who obtained a *capias* from a state judge to secure the presence of a witness in a criminal trial was absolutely immune from liability under section 1983. It logically follows that Wishengrad, whose position and responsibilities in this case were similar to those of a prosecuting attorney, is also entitled to absolute immunity under *Betts.*

The Court noted in *Imbler* that "[a] prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court." 424 U.S. at 424, 96 S.Ct. at 992. The Court stated that the "public trust" would suffer if prosecutors were forced to make such decisions with an eye toward the possibility of future personal liability. *Id.* at 424–25, 96 S.Ct. at 992–93. *See Butz v. Economou,* 438 U.S. at 512, 98 S.Ct. at 2913 ("Absolute immunity is ... necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation."). The Court reasoned that, given the passion created by unsuccessful or improper prosecution, section 1983 suits by defendants could be expected with frequency with the result that prosecutors would waste time defending themselves rather than pursuing their duties. *Imbler v. Pachtman,* 424 U.S. at 425, 96 S.Ct. at 992; *accord, Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (section 1983 claim for damages does not lie against police officer for giving perjured testimony).

The Court stated in *Imbler* that "suits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor" and that "the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials." 424 U.S. at 425, 96 S.Ct. at 992. The Court based its conclusion on the fact that prosecutors must make many decisions under serious limitations of time and

information which could lead to colorable but unjustifiable claims. *Id.* at 425–26, 96 S.Ct. at 992–93.

■ We recognize that absolute immunity should be accorded only in exceptional cases. *Marrero v. City of Hialeah,* 625 F.2d 499, 503–04 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). The rationale underlying the need for absolute immunity must be closely scrutinized before the Court will hold that a government official is protected from liability by an impenetrable shield. *See Scott v. Dixon,* 720 F.2d 1542, 1546 (11th Cir.1983).

■ Nevertheless, we hold the *Imbler* rationale applicable here. As a Department attorney, Wishengrad initiates and prosecutes child protective orders and represents the interests of the Department and the County in Family Court. As such, her duties are similar to those of a prosecutor, who acts "as an advocate for the State" in criminal matters. *Lerwill v. Joslin,* 712 F.2d 435, 437 (10th Cir.1983). The Department's responsibilities for child protection are similar in importance to the prosecutor's office's responsibilities in the criminal justice system. *See Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1098 (W.D.N.Y.1983). Given the importance of the Department's activities, the need to pursue protective child litigation vigorously and the potential for subsequent colorable claims, Wishengrad should be accorded absolute immunity from claims arising out of the performance of her duties. She must be allowed to perform her duties free from fear of potential lawsuits by individuals allegedly harmed by her actions. *See Martin v. Aubuchon,* 623 F.2d 1282, 1285 (8th Cir.1980) (per curiam) (district attorney who caused the initiation of dependency proceedings is absolutely immune since the acts occurred as part of the initiation and prosecution of a criminal case); *see also Clulow v. State of Oklahoma,* 700 F.2d 1291, 1298 (10th Cir.1983) ("bar officials charged with the duties of investigating,

drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions" (citations omitted)). *But cf. Tower v. Glover,* — U.S. —, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (no immunity for public defenders who allegedly conspired with state officials to deprive section 1983 plaintiff of constitutional rights). Consequently, the district court properly granted summary judgment for Wishengrad because of her absolute immunity from liability.

The district court's decision granting summary judgment to the Department and the County was also correct. Walden alleged in her complaint that Wishengrad's acts were "attributable" to the Department and the County "through operation of the law." The district court concluded that this vague allegation sought to impose liability on the two governmental bodies on the basis of *respondeat superior.* 573 F.Supp. at 1118. We accept the court's interpretation as correct, particularly because Walden has not argued on appeal that the district court misconstrued her legal theory.

 Local governmental liability under section 1983 cannot be grounded on the doctrine of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978); *see Ellis v. Blum,* 643 F.2d 68, 85 (2d Cir.1981). A local government will not be liable under section 1983 "unless action pursuant to official [governmental] policy of some nature caused a constitutional tort." *Monell v. Department of Social Services,* 436 U.S. at 691, 98 S.Ct. at 2036. Walden has not pleaded or shown by affidavit any facts which indicate that her allegedly unconstitutional arrest was the product of official government policy. Therefore, the district court properly granted summary judgment to the Department and the County.

The judgment of the district court is affirmed.