08-3069-cv
Cornejo v. Bell

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term, 2009

(Argued: October 7, 2009          Decided: January 4, 2010)

Docket No. 08-3069-cv (Lead), 08-3071-cv (Con)

- - - - - - - - - - - - - - - - - - - - - - - X

SALLY CORNEJO, individually and on behalf of her infant child
Kevin Salas,

Plaintiff-Appellant,

- against -

WILLIAM BELL, individually and as Commissioner,
KATHLEEN CERRITO, individually and as caseworker,
JANICE HOGGS, individually and as supervisor,
JOYCE DE NICHOLSON, individually and as manager,
EUGENE WEIXEL, individually and as caseworker,
RAMON VARGAS, individually and as supervisor,
MAUREEN FLEMING, individually and as deputy director and City of
New York,
FREDDA MONN, individually and as supervising attorney,
JODI KAPLAN, individually and as supervising attorney,
DAWN SCHWARTZ, individually and as attorney
SUSAN SCHENKEL SAVITT, and
THE CITY OF NEW YORK,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - X

Before:   MINER and CABRANES, Circuit Judges, and
          RAKOFF, District Judge.[*]

---

[*]The Honorable Jed S. Rakoff, United States District Judge
for the Southern District of New York, sitting by designation.

-1-

Appeal from the May 20, 2008 judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, <u>Judge</u>), granting summary judgment to defendants, in an action involving wrongful child removal, on the grounds of absolute immunity and qualified immunity under federal and state law. Although we disagree with the district court's conclusion that the caseworker defendants are entitled to absolute immunity under federal law, we agree that they are entitled to qualified immunity and that the rest of the district court's determinations are correct.

AFFIRMED.

CAROLYN A. KUBITSCHEK, Lansner & Kubitschek, New York, New York, <u>for Plaintiff-Appellant</u>.

JANET L. ZALEON, Of Counsel, City of New York Law Department, New York, New York (Michael A. Cardozo, Kristin M. Helmers, Joanthan L. Pines, City of New York Law Department, New York, New York, on the brief), <u>for</u> <u>Defendants-Appellees</u>.

RAKOFF, <u>District Judge</u>.

For centuries, Anglo-American law has protected public officials against claims for damages arising from actions taken in the course of duty. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 806 (1982). "As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." <u>Id.</u> In the case of legislators, judges, and certain executive officials such as prosecutors, the protection usually takes the form of absolute immunity from liability for damages. <u>Id.</u> at 807. In the case of most executive employees, however, the protection takes the form of "qualified immunity," <u>i.e.</u>, immunity

-2-

from liability if the employee was acting in subjective and objective good faith. Id. at 807, 815. The instant case chiefly concerns what kind of immunity attaches to actions taken by two categories of New York employees -- caseworkers and lawyers -- involved in the inherently difficult determination of whether to seek removal of a child from the custody of the child's parents on the ground of child abuse.

**BACKGROUND**

Plaintiff-appellant Sally Cornejo commenced these consolidated actions on behalf of herself and her infant child, Kevin Salas, alleging violations of federal and state law arising from actions taken by the employees of the New York City Administration for Children's Services ("ACS") in connection with the investigation into the death of Cornejo's other infant son, Kenny, and the resulting Family Court proceedings. The defendants-appellees, in addition to the City of New York (named only derivatively), are current or former ACS caseworkers and supervisors (collectively, the "caseworker defendants"), namely, caseworkers Kathleen Cerrito and Eugene Weixel, their supervisors Janice Hogg and Ramon Vargas, Hogg's manager Joyce De Nicholson, De Nicholson's director Maureen Fleming, and the then-acting ACS Commissioner William Bell; and current or former lawyers in ACS's Division of Legal Services (collectively, the "lawyer defendants"), namely, attorneys Dawn Schwartz and Susan Schenkel

Savitt, and their supervisors Fredda Monn and Jodi Kaplan.

The pertinent facts, largely undisputed and, where disputed, taken most favorably to the plaintiff, are as follows:

On October 30, 2002, plaintiff Cornejo returned from work to find her fiancé, Rothman Salas, holding their five-month-old son Kenny, who was not breathing. Kenny was subsequently brought to Schneider Children's Hospital ("Hospital") at 11:30 PM. On the afternoon of October 31, 2002, a nonphysician Hospital employee reported (via telephone call) to the New York State Central Registry of Child Abuse and Maltreatment (the "SCR") that Kenny had suffered a broken rib, diffuse cerebral edema, and a heart attack as a result of being violently shaken by his father. The Oral Report Transmittal ("ORT") documenting the call stated that Cornejo was not present during the shaking incident. A second ORT made at approximately 5:30 PM stated that the rib fracture was several weeks old but that the parents had "failed to provide a plausible explanation" for how Kenny's rib was fractured.

Upon receiving the two ORTs from SCR, ACS assigned caseworker Cerrito to investigate. Cerrito spoke by telephone with Dr. Debra Esernio-Jenssen, a pediatric specialist in charge of the Hospital's Child Protection Consulting Team, who reported that Kenny's immediate brain and heart injuries were most likely caused by Shaken Baby Syndrome. She also expressed her belief that Cornejo had "no part" in the immediate injuries, which

-4-

"would happen immediately after violent shaking." Dr. Esernio-Jenssen further opined, however, that the broken rib could have been the result of a prior shaking incident. Cerrito reported this back to Hogg, who concluded that not only Kenny but also Kevin, the couple's other, eighteen-month-old son, would have to be removed from the home pending further proceedings.

Cornejo was then informed that both her children would be removed from her custody until the ACS investigation was completed. Cerrito arranged for Kevin to be brought to the Hospital, where he was examined and then placed in temporary kinship foster care on an ex parte emergency basis. The medical examination of Kevin showed him to be healthy, with no signs of abuse. Kenny remained at the Hospital, where he died on November 7.

Meanwhile, on November 1, ACS instructed its attorneys to file petitions in Family Court accusing both parents of child abuse of both children. Kaplan filed the petitions, which were signed by Cerrito, that day. The petitions notably failed to differentiate between the two parents, Cornejo and Salas, stating that both parents had either "inflict[ed] or allow[ed] to be inflicted . . . physical injury" or "create[d] or allow[ed] to be created a substantial risk of physical injury" to the children. The petitions included the Hospital diagnosis of Shaken Baby Syndrome as the cause of Kenny's heart and brain injuries; as to

the fractured rib, the petition alleged that the parents "failed to provide an explanation consistent with a non-abusive or non-intentional trauma."  The Family Court remanded the children to ACS, and, as noted, Kenny died on November 7.

Despite an intervening attempt by Cornejo to regain custody of Kevin, this was where matters stood until, on November 14, a city medical examiner informed ACS attorney Schwartz of her preliminary findings: that she "could not say" that Kenny was a victim of Shaken Baby Syndrome and that the "fractured rib" was actually a congenital rib malformation.  As a result, the very next day, ACS itself sought, by Order To Show Cause, to parole Kevin to his mother.  Nevertheless, the Family Court judge, after hearing testimony from Dr. Esernio-Jenssen in which she maintained her conclusion that Kenny had been shaken, declined to return Kevin to his mother's care.  The judge also denied subsequent applications for parole or withdrawal of the petition against Cornejo, citing ongoing disparities in the medical evidence as to the cause of Kenny's death.

In January 2003, the medical examiner issued a final autopsy report that concluded that the actual cause of Kenny's death was a "rare and natural heart defect" and that reaffirmed the medical examiner's previous finding that there was no rib fracture but

only a congenital abnormality. The Hospital staff, however, maintained its view that Kenny had been shaken.[1]

On February 4, ACS sought withdrawal of the petition against Cornejo, but the Family Court judge denied the request, making clear that she would not allow withdrawal of that petition unless ACS was also willing to withdraw the petition against Salas. Nevertheless, the judge did this time allow Kevin to be paroled to Cornejo's custody. On May 20, Cornejo moved for summary judgment and dismissal of the petition against her. At a court appearance on June 10, Schwartz stated that "ACS has no basis to dispute the [medical examiner's] findings," and the Family Court judge allowed both petitions to be withdrawn.

Thereafter, on January 28, 2004, Cornejo commenced, on behalf of herself and her son Kevin, the first of the two civil rights proceedings now consolidated in this case, which, as now consolidated, allege due process and search and seizure violations under 42 U.S.C. § 1983, as well as state and federal claims for malicious prosecution (the latter again under § 1983) and a state law claim for breach of the duty of reasonable care.

On May 19, 2008, the district court granted summary judgment to the defendants. See Cornejo v. Bell, No. CV-04-0341, 2008 WL

---

[1] Kenny's heart was subsequently sent to two pediatric cardiologists for further evaluation. Neither specialist ultimately found a definitive cause for the heart attack, but they concluded that it was more likely that Kenny's death resulted from a congenital defect than from shaking.

5743934 (E.D.N.Y. May 19, 2008). In addition to concluding that none of the plaintiff's rights was violated, the district court alternatively held that both sets of defendants were entitled to absolute immunity from all the § 1983 claims, and that, even failing this, they were entitled to qualified immunity. As to the malicious prosecution and breach of duty of reasonable care claims under New York state law, the district court concluded that the lawyer defendants were entitled to absolute immunity on both claims and that the caseworker defendants were entitled to absolute immunity as to the malicious prosecution claim and qualified immunity as to the unreasonable care claim.

**DISCUSSION**

We review de novo a district court's decision granting summary judgment. See, e.g., Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999). Since we conclude that some form of immunity attaches to each of the challenged actions of each of the defendants sufficient to preclude liability, we do not reach the district court's determination on the merits.

**I.  Federal Claims**

The federal claims are all claims for damages brought under 42 U.S.C. § 1983, which provides "a method for vindicating federal rights elsewhere conferred," including under the Constitution. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). The conduct at issue "must have been committed by a person acting

-8-

under color of state law" and "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). There is no dispute here that the defendants were acting under the color of state law.

**A. Absolute Immunity for Lawyer Defendants**

As noted, the district court held, inter alia, that both the caseworker defendants and the lawyer defendants were entitled to absolute immunity precluding liability under § 1983. This was despite well-established precedent that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." DiBlasio v. Novello, 344 F.3d 292, 296 (2d Cir. 2003) (quoting Burns v. Reed, 500 U.S. 478, 486–87 (1991)) (internal quotation mark omitted). However, there are certain instances where executive employees, such as prosecutors, are entitled to absolute immunity. Imbler v. Pachtman, 424 U.S. 409, 427 (1976). The real distinction between whether an executive employee is entitled to absolute or qualified immunity turns on the kind of function the employee is fulfilling in performing the acts complained of. This is what the Supreme Court has called a "functional" analysis. Briscoe v. LaHue, 460 U.S. 325, 342 (1983). Prosecutors are entitled to absolute immunity, for example, because their prosecutorial activities are "intimately associated with the judicial phase of

-9-

the criminal process, and thus [are] functions to which the reasons for absolute immunity apply with full force." Imbler, 424 U.S. at 430.

Mutatis mutandis, absolute immunity also extends to non-prosecutor officials when they are performing "functions analogous to those of a prosecutor." Butz v. Economou, 438 U.S. 478, 515 (1978). While any analogy between two kinds of executive employees is never perfect, such reasoning by analogy is at the heart of judicial thinking: things that are essentially alike should be treated essentially the same. Thus, the Butz Court held that an agency official who decides to institute an administrative proceeding is entitled in such circumstances to absolute immunity, since that decision is "very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." Id. at 515.

This Court has previously extended absolute immunity to state and federal officials initiating noncriminal proceedings such as administrative proceedings and civil litigation. See Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986) (citing Butz, 438 U.S. at 512–17). Of particular relevance here, we have held that an attorney for a county Department of Social Services who "initiates and prosecutes child protective orders and represents the interests of the Department and the County in Family Court" is entitled to absolute immunity. Walden v.

-10-

*Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984). The *Wishengrad* Court concluded that given "the importance of the Department's [child protection] activities, the need to pursue protective child litigation vigorously and the potential for subsequent colorable claims," the attorney must be accorded absolute immunity from § 1983 claims arising out of the performance of her duties. *Id.* We conclude that the lawyer defendants in the instant case were fulfilling similar functions, and that the district court thus properly extended to those defendants absolute immunity from the § 1983 claims.

### B. Qualified Immunity for Caseworker Defendants

However, the district court was incorrect in its conclusion that the caseworker defendants were also entitled to absolute immunity.[2] Although they undoubtedly played a substantial role in providing the information that helped initiate many of the actions here complained of, the caseworker defendants essentially functioned much more like investigators than prosecutors. Even when they made the initial decision to remove Kevin from his mother's custody, their actions were the functional equivalent of police officers' making arrests in criminal cases, which are a

---

[2] The district court appears to have relied for its conclusion that the caseworker defendants were entitled to absolute immunity on a district court decision, *Levine v. County of Westchester*, 828 F. Supp. 238, 243-44 (S.D.N.Y. 1993), that was affirmed without opinion by this Court. Such an affirmation has no precedential weight.

-11-

classic example of actions entitled to qualified, rather than absolute immunity. See, e.g., Malley v. Briggs, 475 U.S. 335, 340-44 (1986). The caseworker defendants here were performing what was "fundamentally a police function," Robison v. Via, 821 F.2d 913, 918 (2d Cir. 1987), and as such were entitled only to qualified immunity, id. at 920.

Even qualified immunity, however, is sufficient to shield executive employees from civil liability under § 1983 if either "(1) their conduct 'did not violate clearly established rights of which a reasonable person would have known,' or (2) 'it was objectively reasonable to believe that [their] acts did not violate these clearly established rights.'" Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998) (quoting Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) (alteration in original) (internal quotation marks omitted)); see also Harlow, 457 U.S. at 818. Of relevance here, we have previously noted that the second Young prong provides "substantial protection for caseworkers," Tenenbaum v. Williams, 193 F.3d 581, 596 (2d Cir. 1999), which is necessary because "[p]rotective services caseworkers [must] choose between difficult alternatives," id. (second alteration in original) (quoting van Emrik v. Chemung County Dep't of Soc. Servs., 911 F.2d 863, 866 (2d Cir. 1990)). The Tenenbaum Court concluded that summary judgment should thus

-12-

be "readily available to these caseworkers in proper cases under the qualified immunity doctrine." Id. at 597.

Here, the gist of plaintiff's § 1983 claims against the caseworker defendants for denial of due process and unlawful seizure in the immediate removal of Kevin from Cornejo's custody is that defendants had no reason to doubt her assertion that she was not at home when Kenny became ill on October 30, nor to infer that prior abuse had occurred, and so had no basis, even by inference, to remove Kevin and pursue Family Court actions against her. But undisputed facts establish that this is not a reasonable way to characterize the situation that confronted the caseworkers when they took their actions. Specifically, it is undisputed that at the time of Kevin's removal on October 31, ACS had received two ORTs reporting a medical opinion that Kenny had suffered violent shaking and a fractured rib. Although Salas, not Cornejo, was suspected of having shaken Kenny, the rib fracture was diagnosed as several weeks old. There was thus evidence of at least two instances of apparent abuse -- one occurring at an unknown time when Cornejo may have been present -- for which neither parent had an apparent explanation. Moreover, a caseworker had confirmed the substance of the ORTs with Dr. Esernio-Jenssen, and the injuries to Kenny were extremely serious. Under these circumstances, it was objectively reasonable for the caseworker defendants to believe that

-13-

immediate temporary removal of both children without prior judicial authorization was proper. See id. at 593. The caseworker defendants are thus entitled to qualified immunity on the due process and unlawful seizure claims arising from their initial removal of Kevin.

As for the subsequent actions taken in Family Court, these actions were chiefly taken by the lawyer defendants, who, as already determined, were entitled to absolute immunity. While certain of the caseworker defendants provided information to the Family Court, the heart of the complaint against them in this regard is that they failed to adequately apprise the Family Court of exculpatory information. But this Court has found no constitutional violation where caseworkers allegedly committed "sins of commission and omission in what they told and failed to tell . . . the Family Court Judge." van Emrik, 911 F.2d at 866. Indeed, it would take a much more extreme misstatement than any alleged here to override the necessary freedom of action that qualified immunity accords caseworker defendants dealing with the extreme situation when one child suffers fatal injuries while at home and another child is still at home. The caseworker defendants are thus entitled to qualified immunity on the due process claims related to the Family Court actions.

## II.  State-Law Claims

Plaintiff also pursues malicious prosecution claims both under New York State law and, indirectly, under § 1983. Under New York law, a malicious prosecution claim requires: "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996) (citing Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)). And § 1983, in recognizing a malicious prosecution claim when the prosecution depends on a violation of federal rights, adopts the law of the forum state so far as the elements of the claim for malicious prosecution are concerned. See, e.g., Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) ("In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." (internal citations omitted)).

The issue of immunity, however, differs as between the state and federal law claims. As to the claim for malicious prosecution under § 1983, federal law of immunity applies, see, e.g., Gross v. Rell, 585 F.3d 72, 80 (2d Cir. 2009), and thus, since the malicious prosecution claim is grounded on the same allegations as underlay the due process claims, the lawyer

-15-

defendants are entitled to absolute immunity and the caseworker defendants to qualified immunity, either of which are sufficient to defeat the claim for the reasons already described in the preceding section.

As to the state law claim of malicious prosecution, however, the highest New York court to consider the issue has previously determined that in a situation comparable to the instant case, both the caseworkers and the lawyers are entitled to absolute immunity. See Carossia v. City of N.Y., 835 N.Y.S.2d 102 (App. Div. 1st Dep't 2007). Because we are bound "to apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion," we affirm the district court's ruling that all defendants here are entitled to absolute immunity on the state law claim of malicious prosecution. Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999).

Finally, as regards the breach of duty claim, New York law accords the lawyer defendants absolute immunity on such a claim, because their actions with regard to that claim "involve[d] the conscious exercise of discretion of a judicial or quasi-judicial nature." Arteaga v. State, 527 N.E.2d 1194, 1196 (N.Y. 1988). Caseworker defendants, by contrast, may be entitled only to qualified immunity on this claim. But qualified immunity is

-16-

available under New York law if these defendants were "acting in discharge of their duties and within the scope of their employment, and . . . such liability did not result from the willful misconduct or gross negligence."  N.Y. Soc. Serv. Law § 419; see also Yuan v. Rivera, 48 F. Supp. 2d 335, 358 (S.D.N.Y. 1999).  For the reasons previously discussed, the underlying facts establish that the caseworker defendants meet these requirements.

**CONCLUSION**

For the reasons stated, therefore, while we disagree with the district court's conclusion that the caseworker defendants were entitled to absolute immunity on plaintiff's claims under 42 U.S.C. § 1983, we find that they were nonetheless entitled to qualified immunity on those claims and that the rest of the district court's conclusions were correct.

In summary:

(1)  The lawyer defendants are entitled to absolute immunity on plaintiff's § 1983 claims because they were performing functions analogous to those of a prosecutor.  See Wishengrad, 745 F.2d at 152.

(2)  The caseworker defendants are not entitled to absolute immunity on plaintiff's § 1983 claims because their actions were the functional equivalent of arresting officers in criminal cases.

(3) The caseworker defendants <u>are</u> entitled to qualified immunity on plaintiff's § 1983 claims because their actions were objectively reasonable under the circumstances. <u>See</u> <u>Tenenbaum</u>, 193 F.3d at 595-96.

(4) For plaintiff's state-law malicious prosecution claims, all defendants are entitled to absolute immunity under New York law. <u>See</u> <u>Carossia</u>, 835 N.Y.S.2d at 104.

(5) For plaintiff's state-law breach of duty claims, the lawyer defendants are entitled to absolute immunity under New York law because their actions involved the conscious exercise of discretion of a judicial or quasi-judicial nature. <u>See</u> <u>Arteaga</u>, 527 N.E.2d at 1196. The caseworker defendants are entitled to qualified immunity under New York law because they did not commit willful misconduct or gross negligence. <u>See</u> N.Y. Soc. Serv. Law § 419.

Accordingly, the judgment of the district court dismissing the case in its entirety is hereby AFFIRMED.