08-5157-cv
"V.S." v. Muhammad

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term, 2009

(Argued: October 7, 2009          Decided: February 17, 2010)

Docket No. 08-5157-cv

- - - - - - - - - - - - - - - - - - - - - - - X

V.S., individually and on behalf of her infant child, T.S.,

Plaintiffs-Appellees,

- against -

NADIRA MUHAMMAD, individually and as caseworker, NATALIE ARTHUR, individually and as supervisor, BRENDA WILSON, individually and as manager, JOHN B. MATTINGLY, individually and as Commissioner, CITY OF NEW YORK,

Defendants-Appellants,

-and-

DEBRA ESERNIO-JENSSEN, individually and as physician; LONG ISLAND JEWISH MEDICAL CENTER, NORTH SHORE - LONG ISLAND JEWISH HEALTH SYSTEM, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - X

Before:   MINER and CABRANES, Circuit Judges, and
          RAKOFF, District Judge.[*]

---

[*]The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

-1-

Interlocutory appeal by public employees from a ruling of the United States District Court for the Eastern District of New York (Dora L. Irizarry, Judge), denying dismissal of these defendants on grounds of immunity from claims against them involving wrongful child removal and malicious prosecution.

Reversed and remanded.

DEBORAH A. BRENNER, Of Counsel, Corporation Counsel of the City of New York (Michael A. Cardozo, Barry P. Schwartz, Of Counsel, Deborah A. Brenner, on the brief), for Defendants-Appellants.

CAROLYN A. KUBITSCHEK, Lansner & Kubitschek, New York, NY, for Plaintiffs-Appellees.

RAKOFF, District Judge:

This case is one of several recent cases concerned with what degree of protection is afforded municipal employees involved in the often thorny process of determining whether to remove an injured child from the custody of the child's parents and bring child abuse charges against the parents.[1]  We state the pertinent facts most favorably to plaintiff.  Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 104-05 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008).

On August 19, 2004, plaintiff V.S. and her mother took V.S.'s infant son T.S. to the Schneider Children's Hospital in New Hyde Park, New York, with a swollen leg, where he was

---

[1] See, e.g., Cornejo v. Bell, __ F.3d __, No. 08-3069-cv, 2010 U.S. App. LEXIS 38 (2d Cir. Jan. 4, 2010); Graham v. Mattingly, No. 08-5271-cv, 2009 U.S. App. LEXIS 22908 (2d Cir. Oct. 19, 2009) (summary order).

-2-

diagnosed with a fractured femur.[2]  On August 20, the hospital reported the injury to the New York State Register of Child Abuse and Maltreatment, and subsequently submitted a second report stating that T.S. also had a frontal skull fracture and old and new retinal hemorrhages. After reviewing the reports, defendant-appellant Natalie Arthur, a supervisor in the New York City Administration of Child Services ("ACS"), directed one of her caseworkers, defendant-appellant Nadira Muhammad, to conduct an investigation.

Muhammad interviewed V.S., her mother, and T.S.'s biological father, as well as defendant Debra Esernio-Jenssen, M.D. (the head of the hospital's Child Abuse Protection team), and several other doctors.  Initially, neither V.S. nor her mother was able to provide an explanation for T.S.'s injuries, although V.S., who had been bedridden for six weeks after a complicated pregnancy, asserted that she was physically incapable of inflicting injury upon T.S.  Subsequently, however, V.S.'s mother, who had been T.S.'s primary caretaker during this period, admitted that she (the grandmother) had slipped while holding the baby and that his leg had hit the kitchen counter; but she still could not account for the other injuries.

While the hospital staff thereafter concluded that T.S. had

---

[2]  The hospital, or more precisely its parent, the Long Island Jewish Medical Center, North Shore - Long Island Jewish Health System, Inc., along with one of its physicians, Debra Esernio-Jenssen, M.D., are co-defendants in the underlying lawsuit but are not parties to the instant interlocutory appeal.

likely sustained the fracture during the fall described by the grandmother, on August 23, 2004, ACS received a report from Dr. Esernio-Jenssen that concluded that T.S.'s retinal hemorrhages were indicative of "shaken baby syndrome." Muhammad and Arthur then conferred by telephone with Esernio-Jenssen, following which, on August 24, 2004, ACS commenced child protective proceedings in Queens County Family Court against V.S. and her mother, alleging they had abused T.S. and seeking temporary removal of T.S. from the custody of V.S. and her mother pursuant to Article 10 of the New York Family Court Act. See N.Y. Fam. Ct. Act § 1012 et seq.

An initial hearing was held that same day in Family Court, at which V.S. and her mother appeared, represented by counsel. Muhammad testified for ACS that T.S. had suffered unexplained injuries and that the hospital believed that the child was suffering from shaken baby syndrome. Muhammad did not disclose, however, that V.S. had been bedridden for six weeks, or that the hospital had concluded that T.S. had likely suffered the femur fracture while in the care of his grandmother. In reliance on Muhammad's testimony, the Family Court judge granted a temporary order of removal, as a consequence of which T.S., after being released from the hospital on August 25, 2004, was placed in the custody of his biological father, who did not reside with V.S.

V.S. subsequently moved to vacate the order of removal, and the Family Court held a hearing on September 27 and 29, 2004, at

-4-

which V.S. was once again present and represented by counsel. At the hearing, defendant Arthur testified that Dr. Eric Shakin, a pediatric retinal specialist who had examined T.S. when he was first brought to the hospital, had indicated that the retinal injuries were consistent with shaken baby syndrome. Arthur did not disclose, however, that Dr. Esernio-Jenssen had informed defendants (on September 14, 2004) that she now believed V.S. had not injured the infant. The Family Court denied the motion, and V.S. did not appeal.

ACS then proceeded with the child abuse charges filed against V.S. and her mother. At the trial of these charges, held on various days between January 24, 2005 and June 30, 2005, both Dr. Esernio-Jenssen and Dr. Shakin testified for ACS that T.S. suffered from shaken baby syndrome. For V.S., Dr. Ram Kairam, chairman of pediatrics at Bronx Lebanon Hospital, testified that although the infant had signs of retinal and vitreous hemorrhaging, they did not resemble the hemorrhages associated with shaken baby syndrome but were more consistent with childbirth injuries. This diagnosis was corroborated by medical records of injuries suffered at T.S.'s birth.

The Family Court reserved judgment, but on October 17, 2005, before any decision had been rendered, ACS moved, without explanation, to withdraw all allegations against V.S. (but not against her mother). The Family Court granted the motion and released T.S. to V.S.'s care. On November 3, 2005, the petition

-5-

against V.S.'s mother was reduced to charges based solely on T.S.'s fractured femur, and on November 29, 2006, the Family Court entered a finding of neglect against V.S.'s mother.

Shortly thereafter, on January 16, 2007, V.S. commenced the instant action against caseworker Muhammad, Muhammad's supervisor Arthur, Arthur's manager Brenda Wilson, Wilson's superior John B. Mattingly, and derivatively, the City of New York (collectively, the "City Defendants"), as well as Dr. Esernio-Jenssen and her employer, Long Island Jewish Medical Center, North Shore - Long Island Jewish Health System, Inc. The action alleged violations of V.S.'s and T.S.'s rights under the Fourth Amendment (search and seizure and malicious prosecution) and the Fourteenth Amendment (due process). The action also alleged claims under New York state law for malicious prosecution and abuse of process. In support of these claims, V.S. alleged, in essence, that Dr. Esernio-Jenssen had a long history of giving unreliable and misleading diagnoses of shaken baby syndrome and that ACS, knowing this, should not have proceeded in reliance on Dr. Esernio-Jenssen's opinions and without disclosing exculpatory evidence to the Family Court.

On November 20, 2007, the City Defendants moved for summary judgment on the basis of absolute and/or qualified immunity. While the motion was being briefed, the City Defendants also sought dismissal on the basis of the so-called "Rooker-Feldman" doctrine, which maintains that a federal district court should

not entertain a case brought by a litigant who lost in state court and seeks in effect appellate review of that decision by a lower federal court. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

In an opinion issued September 30, 2008, the United States District Court for the Eastern District of New York (Dora L. Irizarry, Judge) denied the defendants' summary judgment motion, concluding that essential elements of the Rooker-Feldman doctrine had not been satisfied, that defendants were not entitled to absolute immunity, and that determination of qualified immunity must await discovery on the issues of whether it was objectively reasonable for the City Defendants to rely on Dr. Esernio-Jenssen's assessments and on whether defendants were proceeding in bad faith.

DISCUSSION

Interlocutory appeal is available both from a denial of absolute immunity, Mitchell v. Forsyth, 472 U.S. 511, 525 (1985), and, if plaintiff's essential factual allegations are taken as true, from a denial of qualified immunity, Skehan, 465 F.3d at 104-05 (2d Cir. 2006). In such circumstances, interlocutory appeal will also lie from a denial of the Rooker-Feldman doctrine if the issue is, as here, inextricably intertwined with the immunity appeal. Id. at 105.

A. *Rooker-Feldman* Doctrine

We agree with the district court that the Rooker-Feldman

-7-

doctrine is inapplicable here.  To invoke that doctrine, defendants must meet four requirements:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must "complain[] of injuries caused by [a] state-court judgment[.]"  Third, the plaintiff must "invite district court review and rejection of [that] judgment[]."  Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" - i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  Applying these requirements to the context of state-court orders of removal of children from parental custody, this Court, in Green v. Mattingly, 585 F.3d 97, 102-03 (2d Cir. 2009), found that the Rooker-Feldman doctrine did not apply because the Family Court had issued a superseding order returning plaintiff's child to plaintiff's custody, and the claims against plaintiff were ultimately dismissed.  Thus, plaintiff neither had lost in state court (the first Hoblock requirement), nor did her claims invite district court review and rejection of a state-court judgment (the third Hoblock requirement).  Here, as in Green, V.S. is not a "state-court loser," since, prior to the commencement of the instant action, ACS had withdrawn all its claims against V.S. and the Family Court had released T.S. to V.S.'s custody.  Likewise, nothing in the instant action invites district court review and rejection of a final state-court judgment.  Accordingly, the Rooker-Feldman

-8-

doctrine is inapplicable here.

## B.  Federal Claims and Qualified Immunity

ACS caseworkers and their superiors are generally entitled to qualified immunity from claims under Section 1983 if it was objectively reasonable for the caseworkers to believe their conduct did not violate clearly established statutory or constitutional rights of which a reasonable caseworker would have known.  Cornejo v. Bell, __ F.3d __, No. 08-3069-cv, 2010 U.S. App. LEXIS 38, at *15-16 (2d Cir. Jan. 4, 2010).  "If caseworkers of reasonable competence could disagree on the legality of . . . defendant[s'] actions their behavior is protected."  Tenenbaum v. Williams, 193 F.3d 581, 605 (2d Cir. 1999)(internal quotation marks omitted).

Here, the district court believed some discovery was necessary before this assessment could be made; but, reviewing the matter de novo, as we are obliged to do, Walczyk v. Rio, 496 F.3d 139, 153 (2d Cir. 2007); Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007), we disagree.

When V.S. was first interviewed, neither she nor her mother could give an explanation, not only for T.S.'s fractured femur but also for T.S.'s other serious injuries that medical tests had revealed.  By contrast, Dr. Esernio-Jenssen made a diagnosis of shaken baby syndrome.  In the absence of any plausible alternative, this was sufficient to warrant the initial decision to seek a court order permitting T.S.'s removal from V.S.'s

-9-

custody.  See, e.g., van Emrik v. Chemung County Dep't of Soc. Servs., 911 F.2d 863, 866 (2d Cir. 1990).  When, at the subsequent hearings, not only Dr. Esernio-Jenssen but also Dr. Shakin reaffirmed the diagnosis of shaken baby syndrome, there remained ample basis for defendants to continue with both custody removal and charges of abuse.  The fact that the caseworkers failed to apprise the Family Court that it was V.S.'s mother, rather than V.S., who had custody of T.S. during much of the relevant period is irrelevant, since V.S. and her mother not only were present at all the hearings but were represented by counsel, who could have brought this and other facts favorable to V.S. to the Family Court's attention.

The district court nonetheless believed that qualified immunity could not yet be granted because of V.S.'s allegations that Dr. Esernio-Jenssen was known to defendants to have repeatedly misdiagnosed child injuries as evidence of child abuse.  In the district court's view, the "reliability of Dr. Esernio-Jenssen's diagnoses . . . is an issue of material fact that goes directly to the objective reasonableness of ACS in seizing and removing T.S. from his mother."  Special App. 49. But to impose on an ACS caseworker the obligation in such circumstances of assessing the reliability of a qualified doctor's past and present diagnoses would impose a wholly unreasonable burden of the very kind qualified immunity is designed to remove.  See, e.g., Wilkinson v. Russell, 182 F.3d

-10-

89, 107-09 (2d Cir. 1999); Defore v. Premore, 86 F.3d 48, 50-51 (2d Cir. 1996) (per curiam).

At all times here relevant, Dr. Esernio-Jenssen was not just a licensed physician, but also the head of the Child Protection Team at the hospital to which T.S. was taken. She based her diagnosis of T.S. on determinations made by another doctor, Dr. Sylvia Kodsi, of retinal hemorrhages, a common indicator of shaken baby syndrome, and her opinion was shared by another well qualified physician, Dr. Shakin. Even if the ACS personnel here involved had been aware of Dr. Esernio-Jenssen's alleged "reputation" for overdiagnosing child abuse, it still would not have been unreasonable for them to rely on Dr. Esernio-Jenssen's diagnosis of T.S. in these circumstances. Thus, as a matter of law, the City Defendants are entitled to qualified immunity and thus dismissal of all the federal charges against them.

### C. State Law and Absolute Immunity

In Cornejo, this Court held that defendants similarly situated to the City Defendants here were entitled under New York law to absolute immunity for claims of malicious prosecution brought under that law. Cornejo, 2010 U.S. App. LEXIS 38, at *18. The district court here, not having the benefit of Cornejo, believed that only qualified immunity was available, but this was error. As for the claim of abuse of process under New York State law, the highest New York court to rule on this issue has likewise concluded that defendants are entitled to absolute

-11-

immunity from such a claim in circumstances comparable to those presented here.  See Carossia v. City of N.Y., 835 N.Y.S.2d 102, 104 (N.Y. App. Div. 1st Dep't 2007).  This Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.  Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999).  There is no such evidence here.

Accordingly, the City Defendants are entitled to absolute immunity on the state law claims here made.

CONCLUSION

For the foregoing reasons, the federal claims against the City Defendants must be dismissed on grounds of qualified immunity and the state claims against the City Defendants must be dismissed on grounds of absolute immunity.  The district court's decision of September 30, 2008 is therefore reversed and the case remanded to the district court with directions to dismiss all claims against defendant-appellants.